Case 3:24-mj-00871-RMS  Document 1-1  Filed 09/27/24  Page 1 of 12

United States District Court
District of Connecticut
FILED AT NEW HAVEN

9/27 ,20 24

By  N. Langello
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| IN RE SEARCH OF<br>TARGET LOCATION 6 | Case No.  3:24-mj-871 RMS |
|---|---|

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Andrew Pfeiffer, a Task Force Officer with the Drug Enforcement Administration being first duly sworn, hereby depose and state as follows:

### AGENT BACKGROUND

1.  I am a member of the Hamden Police Department in the capacity of a sworn police officer and have been employed as a certified police officer in the State of Connecticut since 2012. I am assigned to the Hamden Police Department Street Interdiction Team and am currently assigned as a Task Force Officer (TFO) for the Drug Enforcement Administration (DEA), New Haven District Office (NHDO)-Tactical Diversion Squad (TDS) and have been so assigned since 2019.  My duties include investigating violations of the Connecticut General Statutes and the federal Controlled Substances Act, including but not limited to the diversion of controlled substances from legitimate medical channels.

2.  As a law enforcement officer, I have conducted numerous investigations of violations of the law, which have led to arrests and convictions.  I have coordinated controlled purchases of illegal drugs using confidential sources and cooperating witnesses.  I have planned and participated in the execution of state and federal search warrants pertaining to individuals involved in the distribution of controlled substances, conducted electronic surveillance and physical surveillance of individuals involved in the distribution of controlled substances, analyzed records documenting the purchase and sale of illegal drugs, and spoken with informants and subjects, as well as other local,

state, and federal law enforcement officers, regarding the manner in which narcotics traffickers obtain, finance, store, manufacture, transport, and distribute illegal drugs.

3. I am a case agent investigating KELLDON HINTON and others for manufacturing and distributing controlled substances, including counterfeit pills, in the area of New Haven and beyond. Specifically, on September 5, 2024, KELLDON HINTON, HESHIMA HARRIS, EMANUEL PAYTON, SHAWN STEPHENS, and ARNALDO ECHEVARRIA were arrested, based upon a criminal complaint issued by this Court on September 4, 2024. HINTON was charged with Conspiracy to Manufacture, Distribute, and Possess with the Intent to Distribute Controlled Substances, including 50 Grams or More of a Mixture and Substance Containing a Detectable Amount of Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B)(viii), (b)(1)(C), and 846, and HARRIS, PAYTON, STEPHENS, and ECHEVARRIA were charged with Conspiracy Manufacture, Distribute, and Possess with the Intent to Distribute Controlled Substances in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C) and 846).

4. On September 18, 2024, a grand jury sitting in Bridgeport, Connecticut, returned a three-count Indictment charging the same individuals with drug trafficking offenses. Specifically, HINTON was charged with Conspiracy Possess with the Intent to Distribute Controlled Substances, including 50 Grams or More of a Mixture and Substance Containing a Detectable Amount of Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B)(viii), (b)(1)(C), and 846, and with Possession with Intent to Distribute Controlled Substances, including 50 Grams or More of a Mixture and Substance Containing a Detectable Amount of Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(viii). HARRIS, PAYTON, and STEPHENS, along with two new defendants, MARVIN

OGMAN and CHERYL TYSON, were similarly charged with Conspiracy to Manufacture, Distribute, and Possess with the Intent to Distribute Controlled Substances in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and 846. ECHEVARRIA was charged as part of the conspiracy with HARRIS, PAYTON, STEPHENS, OGMAN, and TYSON and also with Possession with Intent to Distribute Controlled Substances in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C) (collectively, the "Charged Offenses").

## PURPOSE OF THE AFFIDAVIT

I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Civil Procedure to search Storage unit A122 located at 237 Saw Mill Road in West Haven, CT operated by Metro Self Storage ("**TARGET LOCATION 6**"), further described in Attachment A, for evidence of the Charged Offenses and for contraband, fruits of crime, and property used in committing the Charged Offenses, as set forth more particularly in Attachment B, including but not limited to quantities of controlled substances, drug paraphernalia, drug packaging materials, cash deriving from the sale of drugs, bank records, business receipts, and invoices and/or documents and records relating to the Charged Offenses, including records stored in electronic form. Based on the information set forth in this affidavit, I believe there is probable cause to believe that TARGET LOCATION 6 contains evidence of the Charged Offenses.

## PROBABLE CAUSE

5. On September 5, 2024, DEA Task Force Officer Andrew Pfeiffer signed an affidavit in support of search warrants for 34 Tyler Street Extension, East Haven, CT ("Target Location 1") and 55 Dewitt Street, New Haven, CT ("Target Location 2"); and one 2023 Gray Chevy Malibu bearing NY marker plate LJX9536 ("Target Vehicle 1") being used by HINTON in furtherance of the Charged Offenses, and in support of arrest warrants for HINTON, HARRIS, PAYTON,

3

STEPHENS and ECHEVARRIA for the Charged Offenses. A copy of that affidavit (hereinafter, the "Original Affidavit") has been attached as Attachment C and incorporated herein.

6. On September 17, 2024, DEA Task Force Officer Andrew Pfeiffer signed an affidavit in support of search warrants for several cell phones located in the possession of HINTON at the time of his arrest, including one gray "Samsung" smartphone (DEA Exhibit N-39) with cell phone number (475) 355-0907 (the "HINTON TELEPHONE"). A copy of that affidavit (hereinafter, the "Device Affidavit") has been attached as Attachment D and incorporated herein. On that same date, the Honorable Robert M. Spector authorized the search of those cell phones, which as to Exhibit N-39 commenced shortly thereafter. *See* In re Search Warrant, No. 3:24-MJ-837 (RMS).

7. On September 18, 2024, DEA Task Force Officer Andrew Pfeiffer signed an affidavit in support of a warrant to search storage unit B8 at 237 Saw Mill Road in West Haven, CT operated by Metro Self Storge. A copy of that affidavit (hereinafter the "B8 Storage Locker Affidavit") has been attached as Attachment E and incorporated herein. On that same date, the Honorable Robert M. Spector authorized the search of that location, the search of which commenced shortly thereafter. The storage unit was empty.

8. On September 20, 2024, DEA Task Force Officer Andrew Pfeiffer signed an affidavit in support of a warrant to search storage unit A3 at 237 Saw Mill Road in West Haven, CT operated by Metro Self Storage. A copy of that affidavit (hereinafter the "A3 Storage Locker Affidavit") has been attached as Attachment F and incorporated herein. On that same date, the Honorable Robert M. Spector authorized the search of that location, the search of which commenced shortly thereafter. The storage unit was found to contain at least a dozen extra-large storage bins filled with hundreds of thousands of counterfeit pills.

*HINTON's Use of Storage Facilities*

9. As set forth in the B8 Storage Locker Affidavit and the A3 Storage Locker Affidavit (collectively, the "Storage Locker Affidavits"), investigators learned as they began the search of the HINTON TELEPHONE, that HINTON had contacted Metro Self Storage ("Metro") in West Haven, CT in August 2024 and subsequently directed an associate the procure that space for him, which the associate did, shortly thereafter. Messages from the HINTON TELEPHONE further revealed that prior to securing that storage space, HINTON had advised coconspirator Emanuel PAYTON that storage facilities were a safe place to store money.

10. Also in the B8 Storage Locker Affidavit, I described video obtained from the HINTON TELEPHONE of HINTON in a large room consistent with a storage unit or garage. The video appears to have been recorded in Summer 2024. He can be heard stating that this location could be "Location 3." A preliminary review of the records obtained from the phone suggest that HINTON sent this video to HARRIS, PAYTON and other associated with HINTON's drug distribution network. *See* Storage Locker Affidavit ¶ 13. Based on my knowledge of this investigation, I believe that when HINTON refers to "Location 3," he is directly referencing the fact that he and his coconspirators are already operating two locations to manufacture, store, and sell counterfeit pills with the HINTON DTO and that in the Summer of 2024 he was looking for a third location. At the time of HINTON's arrest, investigators had positively identified one location—HINTON's 34 Tyler Street Extension garage laboratory ("Target Location 1")—as one of those three locations. .

11. Thereafter, as set forth above, investigators located hundreds of thousands of additional counterfeit pills in Metro Storage Locker A3. In addition, during the search of HINTON's 55 Dewitt Street residence on September 5, 2024, investigators located approximately 5

sets of keys that appeared to be associated with the Metro Storage facility at 237 Saw Mill Road. As a result, I believe that HINTON maintains numerous additional locations within the Metro Storage facility to further the HINTON DTO's activities, including to stash additional quantities of counterfeit pills.

### *Identification of Metro Storage Unit A122 ("TARGET LOCATION 6")*

12. In an effort to identify potential associates of HINTON utilizing Metro Storage, investigators reviewed registration information for storage units within its 237 Saw Mill Road facility. Upon reviewing the registration information, investigators recognized a registrant for Unit A122 by the name of "Cara Vo," which was first established on September 3, 2009 and has been paid through October 2024. At the time of initial registration, Unit A122 was registered in the name of Cara Vo at phone number 203-435-7627 (the "Vo Telephone"), however, Metro Storage records reflect that on or about March 15, 2024, the contact phone number for Cara Vo's Unit A122 was changed to 203-317-8831. Based on my training and experience and knowledge of this investigation, I know that narcotics traffickers sometimes utilize fictitious names, addresses, and phone numbers when registering instruments used in drug trafficking, such as cell phones and storage facilities, to thwart law enforcement's ability to investigate criminal activity. In this case, the timing of the phone number change on Unit A122 from the -7627 (the "Vo Telephone") to -8831 appears to be around the same month that the Vo Telephone is being used to contact the HINTON TELEPHONE to purchase bulk quantities of counterfeit oxycodone pills, indicative to me that the individual using the Vo Telephone may be trying to obscure the association between the A122 storage locker and the purchase and redistribution of counterfeit pills from HINTON, as set forth in greater detail below.

*Use of the Vo Telephone to Contact HINTON for Pills*

13.     During the investigation, investigators were reviewing HINTON's pen register data and observed numerous communications between HINTON and the phone number initially registered to Unit A122 ending in -7627 (the "Vo Telephone"). During a review of preserved text content from the HINTON TELEPHONE from March 2024, investigators observed the Vo Telephone texting with HINTON and appearing to order approximately 100 counterfeit oxycodone pills, which through my training and experience, I know to be a redistributable quantity of counterfeit pills. Following HINTON's arrest on September 5, 2024, a search of the HINTON TELEPHONE, which remains ongoing, has revealed numerous additional text messages between HINTON and the Vo Telephone in which the user of the Vo Telephone appears to order hundreds of counterfeit oxycodone pills at a time. In addition, investigators conducted surveillance on meetings between HINTON and an individual identified as Aziah Zeno during which HINTON and Zeno appear to engage in hand-to-hand transactions. Based on the timing of these meetings and communication between the Vo Telephone and the HINTON TELEPHONE, investigators believe that Zeno is the likely operator of the Vo Telephone.

14.     Investigators have attempted to determine the individual(s) who may be accessing or attempting to access Unit A122 during the time period that HINTON was trafficking counterfeit pills to redistributors. Records from Metro Storage show that the account associated with Cara Vo for Unit A122 was used to access the Metro Storage facility as recently as March 2023. However, based on my knowledge of this investigation, I know that although Metro Storage provides an access code to each storage unit registrant, those access codes can be shared between individuals and can provide individuals who are not valid registrants to gain access to Metro Storage spaces, as

evidenced by HINTON appearing to use the access code for another individual as discussed in the A3 Storge Locker Affidavit attached hereto and incorporated by reference.

15. Finally, on September 20, 2024, the landlord of Metro Storage provided consent to DEA investigators to conduct an open-air dog sniff within the common area of Section A of the Metro Storage facility outside. That same day, the common area outside of **TARGET LOCATION 6** was examined by a trained narcotics detection canine. The canine is a seven (7) year old German Shephard dog trained and certified by the Connecticut State Police to alert to the odor of narcotic and controlled substances since April 9, 2021. These odors include cocaine, crack cocaine, heroin, MDMA (ecstasy), steroids, and methamphetamines. Upon location of these odors, K9 Ado is trained to sit at the source of the odor indicating a passive alert. This alert may also include items recently contaminated with, or associated with, the odor of one or more of the substances. Upon examination of the common area outside of **TARGET LOCATION 6**, the canine handler informed DEA investigators that the canine alerted for a positive narcotic odor.

16. For these reasons and based on the evidence set forth above, there is probable cause to believe and I do believe that HINTON continues to maintain **TARGET LOCATION 6** for the purpose of stashing additional quantities of counterfeit pills that were not originally seized during the search of his 34 Tyler Street Extension garage laboratory on September 5, 2024, and that evidence of the Charged Offenses will be found in **TARGET LOCATION 6**.

17. I further request authorization to search **TARGET LOCATION 6** any time day or night. The bases for this request include that **TARGET LOCATION 6** is a long-term storage facility and not a residence where individuals are believed to be living or sleeping during nighttime hours. In addition, evidence that HINTON made calls inquiring about the status of one of his storage locations following his arrest leads investigators to believe that HINTON might eventually attempt

to have associates access and move the contents of the unit. Finally, given the volume of suspected counterfeit pills being trafficked by the HINTON DTO and investigators' knowledge of the dangerous nature of those counterfeit pills, along with the belief that **TARGET LOCATION 5** continues to contain a quantity of those counterfeit pills, a search authorized outside of the hours of 6:00 a.m. to 10:00 p.m. is necessary to ensure the immediate safety of the community, including but not limited to other storage unit renters, property maintained in other units, and maintenance staff.

## CONCLUSION

18. Based on this information set forth in this affidavit as well as the Original Affidavit, the Device Affidavit, and the Storage Locker Affidavits, I respectfully submit that there is probable cause to believe that **TARGET LOCATION 6** contains evidence of the Charged Offenses.

Respectfully submitted,

ANDREW PFEIFFER (Affiliate)
Digitally signed by ANDREW PFEIFFER (Affiliate)
Date: 2024.09.27 14:29:29 -04'00'

Andrew Pfeiffer
Task Force Office
Drug Enforcement Administration

The truth of the foregoing affidavit has been attested to me over the telephone by TFO Andrew Pfeiffer over the telephone on this 27th day of September, 2024.

Robert M. Spector
Digitally signed by Robert M. Spector
Date: 2024.09.27 14:39:58 -04'00'

HONORABLE ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to be Searched

Storage unit A122 located at 237 Saw Mill Road in West Haven, CT operated by Metro Self Storage

## ATTACHMENT B

### Particular Things to be Seized

The following items evidencing violations of Conspiracy Manufacture, Distribute, and Possess with the Intent to Distribute Controlled Substances in violation of Title 21, United States Code, Sections 841(a)(1) and 846) (collectively, the "Charged Offenses"):

1. Any controlled substance (all of which could be in any form) and items containing residue of controlled substances;

2. Paraphernalia used and commonly associated with the possession and distribution of controlled substances, including, but not limited to: scales, packaging materials, including plastic baggies, plastic or glass vials, heat sealing machines, pipes, grinders, funnels, presses, pill punches/dies, sifting screens and/or strainers, and any materials used for "cutting" or diluting controlled substances;

3. Any books, records, receipts, notes, ledgers, journals, travel documents, and other papers relating to the purchase and distribution of controlled substances;

4. Bank statements, tax records, financial statements and records, safe deposit keys, storage unit keys, receipts, and other books and records, including any related to the purchase of real property and personal property (including automobiles), and, in general, any records or documents evidencing the obtaining, transfer, concealment, or expenditure of money or other assets, and/or demonstrating the use of monies generated by the sale of controlled substances.

5. United States currency, stocks, bonds, certificates of deposit, any other financial instruments, money counters, and the contents of any safes or other security type boxes or locked boxes and containers, including any jewelry, precious metals and gems, such as gold, silver and diamonds evidencing the obtaining, transfer, concealment, or expenditure of money or other assets, and/or demonstrating the laundering or use of monies generated by the sale of controlled substances;

6. Business receipts, invoices, records of accounts payable and receivable, and general ledgers;

7. Identification documents and keys evidencing a possessory interest in premises, vehicles and storage containers;

8. Records relating to ownership, occupancy, or use of the Target Premises (such as utility bills, phone bills, rent payments, mortgage payments, photographs, insurance documentation, receipts and check registers);

9. Records relating to the operation or ownership of any computer hardware, software, storage media, or data (such as user names, passwords, telephone records, notes, books, diaries, and reference materials);

10. Records pertaining to accounts held with companies providing Internet access or remote storage of either data or storage media;

11. All computer equipment and peripherals that may be interdependent, the software to operate the computer system, related instruction manuals that contain directions concerning the operation of the computer system, the software programs, and all electronically stored or computerized computer data; any physical keys, encryption devices, dongles, passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data;

12. Any computer equipment or digital devices that are capable of being used to commit or further the crimes referenced above, or to create, access, or store evidence, contraband, fruits, or instrumentalities of such crimes, including central processing units; laptop or notebook computers; personal digital assistants; wireless communication devices including paging devices and cellular telephones; peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communication devices such as modems, routers, cables, and connections; storage media; and security devices;

13. Any magnetic, electronic, or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, and cell phones capable of being used to commit or further the crimes referenced above, or to create, access, or store evidence, contraband, fruits, or instrumentalities of such crimes;

14. Any computer equipment or digital devices used to facilitate the transmission, creation, display, encoding, or storage of data, including word processing, equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners that are capable of being used to commit or further the crimes referenced above, or to create, access, process, or store evidence, contraband, fruits, or instrumentalities of such crimes;

15. All passwords, passphrases, encryption keys, encryption dongles, and/or any information, including tools, records, and techniques used to activate and/or navigate and access in plain-text data stored in encrypted data systems, encrypted filesystems, encrypted files, and encrypted records or documents;

16. All records, documents, programs, applications, or materials created, modified, or stored in any form, including in digital form, on any computer or digital device, that show the actual user(s) of the computers or digital devices during the time the device was used to commit the crimes referenced above, including the web browser's history; temporary Internet files; cookies, bookmarked, or favorite web pages; email addresses used from the computer; MAC IDs and/or Internet Protocol addresses used by the computer; email, instant messages, and other electronic communications; address books; contact lists; records of social networking and online service usage; and software that would allow others to control the digital device such as viruses, Trojan horses, and other forms of malicious software;

17. Records of any communications relating to drug trafficking; and

18. Firearms and ammunition.